UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| AREDIA® AND ZOMETA® PRODUCTS ) | |
| LIABILITY LITIGATION ) | |
| ) | No. 3:06-MD-1760 |
| (MDL No. 1760) ) | Judge Campbell/Brown |
| ) | |
| This Document Relates to: ) | |
| *Spiese*, 3:06-0858 ) | |

**TO: THE HONORABLE TODD J. CAMPBELL**

## I. REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge recommends that the motion to dismiss filed by the Novartis Pharmaceuticals Corporation (NPC) (DE 6391; Related Case 26) be **GRANTED**, that this case be **DISMISSED** with prejudice, and that any pending motions be **TERMINATED** as moot.

## II. INTRODUCTION AND BACKGROUND

Jean L. Spiese ("Ms. Spiese"), the original plaintiff, died on April 11, 2007. Former counsel, Mr. Russel Beatie, filed a suggestion of death on July 27, 2007. (DE 520) Thereafter, attorney Beatie filed a motion to substitute on October 23, 2007 in which he: 1) represented that Ms. Spiese's claim survived to her personal representative under Pennsylvania law; 2) represented that Ms. Spiese's husband, Albert Spiese ("Mr. Spiese"), had been named executor of her estate; and 3) requested that the court enter an order substituting Mr. Spiese as his late wife's personal representative in this action. (DE 727) The motion was granted on October 25, 2007. (DE 742)

Present counsel, Mr. Daniel Osborn,[1] filed a subsequent motion to substitute on January 31,

---

[1] Attorneys Beatie and Osborn were partners in the law firm of Beatie and Osborn LLP at the time this action commenced. Beatie and Osborn LLP dissolved in December 2008. (DE 2088; Related Case 12) Mr. Osborn moved to substitute himself as the attorney of record in the instant case on March 2, 2009. (DE 2088; Related Case 12) The

2013 seeking to substitute Mr. Spiese's surviving daughter, Jacqueline Heck (Ms. Heck), for Mr. Spiese who was "ill and unable to continue as the plaintiff in th[e] lawsuit" at the time the motion was filed, and who died the day following. (DE 6344, 6488, p. 3; Related Case 22, 31) Letters of administration issued to Ms. Heck on January 17, 2013 by the Register of Wills for the County of Lancaster, Commonwealth of Pennsylvania, were attached to the motion. (DE 6344 & Ex. A; Related Case 22)

NPC responded on February 21, 2013 in the form of a combined petition for abatement under Pennsylvania law, a motion to vacate *ab initio* the order granting the motion to substitute entered in 2007, and a motion to dismiss under both Rule 25(a), Fed. R. Civ. P. and the Case Management Order (CMO). (DE 6391; Related Case 26) NPC averred that "months of NPC requests to depose Mr. Spiese" revealed that Mr. Spiese had not been appointed his late wife's personal representative, that Ms. Spiese's estate was not opened until January 17, 2013, and that the October 23, 2007 motion to substitute was granted based on misrepresentations made by then-counsel, Mr. Beatie. (DE 6391, p. 2; Related Case 26) Thereafter, Mr. Osborn filed a "memorandum in further support" of the motion to substitute, in which Mr. Osborn admitted that letters of administration had never been issued to Mr. Spiese. (DE 6488, p. 4; Related Case No. 31)

The Magistrate Judge denied the motion to substitute on March 27, 2013. (DE 6515; Related Case 33) Mr. Osborn did not file a motion for review under Rule 72(a), Fed. R. Civ. P. and/or LR72.02(b)(1), Local Rules of Court. Therefore, NPC's motion to dismiss is properly before the court.

---

motion was granted on April 14, 2009. (DE 2149; Related Case 14)

## III. ANALYSIS

### A. Abatement

The findings of fact, citations, and analysis pertaining to question of abatement in the Magistrate Judge's order denying the motion to dismiss are incorporated herein by reference. (DE 6515; Related Case 33) The relevant legal conclusions drawn in that order are summarized below.

The common law plea of abatement, *i.e.*, dismissal with prejudice, applies to probate and estates in the State of Pennsylvania. Abatement is codified in 20 Pa. C.S.A. § 3375. There is a mandatory one (1) year statue of limitations under § 3375 to appoint a personal representative, otherwise abatement applies. The only discretion that the courts have under § 3375 with respect to abatement is to consider whether a "reasonable explanation" exists in those instances where letters of administration are not timely obtained. A petitioner also does not become a decedent's personal representative under § 3375 unless/until letters of administration have been issued by competent state authority. Mr. Spease never opened his wife's estate; therefore, letters of administration were never issued. Because letters of administration were never issued to Mr. Spiese, he was never his late wife's personal representative under Pennsylvania law. Appointment as executor of his late wife's estate is not the same as being appointed Ms. Spiese's personal representative under Pennsylvania law.

The one year statute of limitations begins to run under § 3375 upon the filing of a suggestion of death which, in Ms. Spiese's case, was July 27, 2007. The letters of administration in this case were not obtained until more than five and one-half (5½) years after the suggestion of death was filed when they were issued to Ms. Heck on January 17, 2013. The only explanation offered by Mr. Osborn for this 5½ year delay was his "belief that Mr. Spiese had been properly substituted in

2007." Mr. Osborn's excuse was not a reasonable explanation, the determination of which is the limit of the court's authority to inquire under § 3375. Pennsylvania case law cited in the pleadings, and researched *sua sponte* by the Magistrate Judge, provided no grounds upon which to base a "reasonable-explanation" exception to abatement under the facts of this case.[2]

For the reasons explained above, this action is subject to abatement under Pennsylvania law. Therefore, this case should be dismissed with prejudice.

### B. Failure to Comply with Rule 25(a)

Rule 25(a) provides the following with respect to substitution in the event of the death of a party when the claim is not extinguished:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

The court may enlarge 90-day period under Rule 25(a) if a motion for an extension of time is filed prior to the expiration of the 90-day time frame. Rule 6(b), Fed. R. Civ. P. (1963 amendment). Whether it grants an extension is left to the court's sound discretion. *Id*. The court may grant a motion for an extension of time after the 90-day time frame has expired only upon a showing of "excusable neglect." Rule 25 (1963 Amendment); 6(b)(1)(B), Fed. R. Civ. P.

As previously established, Ms. Spiese died on April 11, 2007, a suggestion of death was filed on July 27, 2007, and a motion to substitute on October 23, 2007. The October 23, 2007 motion to

---

[2] The fact that the letters were issued at that late date does not imply that they are somehow proper under Pennsylvania law. On the contrary, Pennsylvania statutes and case law all support the conclusion that the letters of administration would not survive judicial scrutiny.

substitute complied with Rule 25(a). However, the Magistrate Judge determined in his order denying the January 31, 2013 motion to substitute that his October 25, 2007 order granting the first motion to substitute was based on misrepresentations made by then-counsel, Mr. Beatie. Because of those misrepresentations, the Magistrate Judge vacated his October 25, 2007 *ab initio*. The upshot of vacating that order *ab initio* is that, as of the date of this R&R, there has not been a proper plaintiff in this action since Ms. Spiese died more than six (6) years ago.

Given that the 90-day requirement under Rule 25(a) had long past, Mr. Osborn should have filed a motion for an extension of time to substitute Ms. Heck. He did not. As previously established, however, whether to grant that extension would have required a showing of excusable neglect. As previously noted, *supra* at p. 3, the only explanation offered by Mr. Osborn for the 5½ year delay was his "belief that Mr. Spiese had been properly substituted in 2007." Uninformed belief does not constitute "excusable neglect."

As shown above, Mr. Osborn failed to comply with Rule 25(a) and his failure cannot be attributed to excusable neglect. For these reasons, this case should be dismissed with prejudice under Rule 25(a).

### C. Failure to Comply with the CMO

Substitution where there has been the death of a plaintiff in this MDL is governed by both Rule 25(a) <u>and</u> the CMO. (DE 89, ¶ V, pp. 12-13) The specific provisions of the CMO at issue here are quoted below:

> The ninety (90) day time period for filing a Motion for Substitution, as required by Fed. R. Civ. P. 25(a), will commence upon the filing of a Suggestion of Death . . . .
>
> In the event that applicable state law requires the opening of an estate and the appointment of a personal representative to pursue the claims

>of a deceased plaintiff, plaintiff's counsel shall initiate or cause to be initiated proceedings to open an estate and/or obtain the appointment of a personal representative for plaintiff within thirty (30) days of the plaintiff's death . . . .
>
>Plaintiff's failure to comply with the provisions of this Section, including the requirement that an Order appointing the substitute plaintiff as the decedent's personal representative be filed prior to remand where the Court grants a provisional substitution, will entitle Defendant to request a dismissal of plaintiff's action with prejudice in accord with Fed. R. Civ. P. 25(a).

(DE 89, ¶¶ V.B, C.2 and 3, pp. 12-13)

NPC's argument here is that this case should be dismissed because counsel failed to comply with those portions of the CMO quoted above. The law is well established that clients are ultimately responsible for the acts and/or omissions of their attorney. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 396-97 (1993) (holding that it was error to "suggest[] that it would be inappropriate to penalize respondents for the omissions of their attorney"); *Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1982)(holding that there is "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client"); *United States v. Boyle*, 469 U.S. 241, 251 (1985)("reliance of a lay person on a lawyer . . . cannot function as a substitute for compliance with an unambiguous" rule).

Notwithstanding the foregoing, dismissal on procedural grounds is disfavored in the Sixth Circuit, subject to the sound discretion of the court. *See Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980). An abuse of discretion occurs when the district court's action leaves "[a] definite and firm conviction that the trial court committed a clear error of judgment." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Courts in the Sixth Circuit typically have considered the following four factors when considering whether dismissal is proper for failing to comply with procedural rules: 1) whether failure to comply was a result of willfulness, bad faith, or

fault; 2) whether the adversary was prejudiced by the dismissed conduct; 3) whether the dismissed party was warned that failure to comply could lead to dismissal; and 4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *See e.g., Schafer v. City of Defiance Police Dept., et al.*, 529 F.3d 731, 737 (6th Cir. 2008); *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999). Although none of the factors above is outcome dispositive, a case "is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Knoll*, 176 F.3d at 363. These four factors are addressed below.

### 1. Willfulness, Bad Faith or Fault

The basic question here is: "Why did it take Mr. Osborn nearly four (4) years since he became the attorney of record to determine that Ms. Spiese's estate had never been opened, that having failed to open the estate Mr. Spiese was not his late wife's personal representative under Pennsylvania law and that, as a consequence of these two factors, there had not been a proper plaintiff in this case since Ms. Spiese died."[3]

Although it does not say so specifically, the clear intent of the CMO is that plaintiffs' counsel will keep in touch with their clients, especially important in this Multi-District Litigation (MDL) since the original plaintiffs all suffered from cancer, that some of them could be expected to die, and that any relief awarded in their case could be expected to accrue to their estate. Mr. Osborn was a member of the Plaintiffs' Steering Committee (PSC) (DE 87) at the time the CMO was entered on July 28, 2006 (DE 89). As a member of the PSC, Mr. Osborn is knowledgeable of the requirements set forth in the CMO, the intent/purpose of those requirements, and his obligation to comply with those requirements.

---

[3] Whether Mr. Osborn did, or did not, know of Mr. Beatie's misrepresentations in 2007 is not at issue here.

The Magistrate Judge assumes for the sake of argument that Mr. Osborn was in contact with Mr. Spiese during the time in question. The Magistrate Judge also assumes for the sake of argument that Mr. Osborn was aware that Mr. Spiese had been appointed executor of his late wife's estate, and that Mr. Spiese was required to open her estate to be appointed as his late wife's personal representative under Pennsylvania law. Although it is unlikely that Mr. Spiese would have mentioned of his own volition that he had not opened his late wife's estate if Mr. Osborn contacted him, or vice versa, Mr. Osborn nevertheless had a duty to inquire. Ms. Spiese had been dead for two (2) years when Mr. Osborn became the attorney of record in her case. Mr. Osborn's statement that he was of the "belief that Mr. Spiese had been properly substituted in 2007" shows ultimately that he never inquired.[4]

As explained above, Mr. Osborn is at <u>fault</u> for not identifying the problem when it should have been, or correcting the problem under Rule 25(a) and/or the CMO when it could have been. The next question is whether Mr. Osborn's actions/inactions were willful.

The fault here likely stems from the increasingly apparent pattern of what can best be described as Mr. Osborn's willful neglect of his clients. Mr. Osborn has demonstrated more than once in this MDL that he has a spotty record of keeping in touch with his clients, of whom he represented more than three hundred (300) at the time he became the attorney of record in this case. So prevalent is Mr. Osborn's failure to keep in touch with his clients that the Magistrate Judge felt obliged to admonish him from the bench to do a better job during a hearing held under Rule 16, Fed. R. Civ. P. on April 11, 2013.

---

[4] It goes without saying that, if Mr. Osborn did not have procedures in place to ensure that it remained in contact with his clients, then that failure constitutes **fault** on its face.

8

To the extent that failure to keep in touch with his clients constitutes Mr. Osborn's standard operating procedure (SOP), then that SOP is "knowing." To the extent that Mr. Osborn's failure to keep in touch with his clients is "knowing," then his conduct is **willful**.

## 2. Prejudice

NPC has had to bear the costs of litigating this particular issue. To the extent that NPC has had to commit its resources to litigate an issue resulting from opposing Mr. Osborn's failure to know what is going on in his cases, NPC has been prejudiced.

This case also was among the first group of cases to be referred to fact discovery with March 15, 2013 the date that a suggestion of remand was to be entered. (DE 6156) The intended date to enter a suggestion of remand has passed. To the extent that discovery in this case has been held in abeyance pending a resolution of this issue, remand will be delayed even longer. Moreover, if NPC's motion to dismiss is denied, NPC will have to complete discovery in this case at a time when NPC has begun to shift its resources to discovery in the second group of cases submitted to fact discovery thereby adversely affecting that effort. The delay in suggesting remand, and the potential requirement to address outstanding discovery requirements in this case while cases in the second group are in fact discovery, both constitute prejudice.

Finally, to the extent that this case has been delayed, if NPC's motion to dismiss is denied, then it will have to defend this case on remand later than otherwise would have been the case. Costs calculated in future dollars generally are greater than costs calculated in present dollars. Because it likely will cost more to defend against this case in the future, NPC will be prejudiced yet again.

### 3. Prior Warning

The CMO provides clear warning that failure to substitute entitles the defendant to move for dismissal with prejudice. (DE 89, ¶ V.C.3, p. 13. The intent/purpose of the CMO in the context of substitution is to ensure that there is a proper plaintiff in these cases before remand. As previously noted, *supra* at p. 8, Mr. Osborn was "knowledgeable of the requirements set forth in the CMO, the intent/purpose of those requirements, and his obligation to comply with those requirements." Mr. Osborn knew, and fully understood, the possible consequences of his failure to comply with the CMO.

### 4. Whether Other less Drastic Sanctions Were Considered

The Magistrate Judge recognizes that dismissal with prejudice is the ultimate sanction for Mr. Osborn's failure to comply with the intent/purpose of the CMO, as well as Rule 25(a). However, after considering other less drastic sanctions, the Magistrate Judge is of the view that dismissal with prejudice is the appropriate sanction in this case. Mr. Osborn's failure in this case has burdened the court, strained scarce court resources, delayed disposition of this case, and prejudiced the defendant.

### 5. Summary of the Analysis

The four factors addressed above each should be decided in NPC's favor. Therefore, NPC's motion to dismiss on procedural grounds under the CMO, as well as Rule 25(a), should be granted.

### **CONCLUSIONS**

For the reasons explained above, this case should be dismissed with prejudice under the common law doctrine of abatement as provided under Pennsylvania law. This action also should be dismissed with prejudice for failure to comply with either Rule 25(a) or the CMO.

**RECOMMENDATIONS**

For the reasons explained above, the Magistrate Judge recommends that the motion to dismiss filed by NPC (DE 6391; Related Case 26) be **GRANTED**, that this case be **DISMISSED** with prejudice, and that any pending motions be **TERMINATED** as moot**.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 3rd day of May, 2013.

/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge